The next case, Howe-Shao v. Sessions. Good morning, honors. May it please the court, my name is Joshua Bardavid for petitioner Mr. Shao. Mr. Shao credibly demonstrated past persecution and a well-founded fear of future persecution. While the issues of past persecution and future fear are interrelated, I would like to start with the agency's analysis of his well-founded fear of future persecution, which I believe is dispositive of the case and alone sufficient to remand the case for further analysis. The immigration judge provided an incredibly succinct analysis of Mr. Shao's future fear, page 78 of the record, in one paragraph where she analyzes basically a pattern or practice of persecution of Christians. She makes no mention, and nor does the board, of the particular circumstances of Mr. Shao's case. That is, Mr. Shao testified to proselytizing in the United States and believing that that's part of his religious belief and religious obligation as a Christian to do so, and that he would continue to do so if returned to proselytize. Not just practice, but openly proselytize. And this is significant given the background country conditions indicate that there is far harsher treatment of individuals who are caught openly trying to bring other Christians to an underground church as opposed to merely proselytizing in China. No, he was not, Your Honor. But he indicates, and his pastor's letter from the United States indicates that he's brought two other individuals to his church who since become Christians. And he testified that that's part of what he does now that he's been baptized here in the United States and is a regularly practicing Christian. And so what we're saying is not that the immigration judge as a factual matter erred in her analysis of the country conditions, but in a legal manner that she did not consider Mr. Shao's particular circumstances when deciding that he did not demonstrate a well-founded fear of future persecution. That alone is sufficient to remand the case. And I would also note that it's very unclear whether the immigration judge applied her analysis, her negative credibility determination with respect to the past persecution to Mr. Shao's future fear. She seems to indicate that, but then analyzes as if he were a Christian and what the country conditions were. If that was the case, if that was the basis was applying the negative credibility determination to her future fear analysis, that would beg the question of whether or not she was finding Mr. Shao's pastor who provided a statement and stipulated testimony was also not credible because there was no analysis of the pastor's credibility and no indication to find the pastor not credible. Where the pastor indicated that Mr. Shao in fact was a regularly practicing Christian, had proselytized and brought two individuals to the church. And so because of that lack of clarity of the negative credibility determination, on that basis alone would require remand for further explanation as to whether the immigration judge was in fact providing a negative credibility determination to the future fear analysis. And if so, why? With respect to past persecution, we would respectfully assert that the agency also erred in their analysis of Mr. Shao's credibility. The primary basis provided by the agency was the failure of Mr. Shao to mention that he went to a clinic to pick up medicine, which his mother later applied to his wounds. And the agency seemed to provide the greatest weight to that. At the outset, the immigration judge erred, which the board noted, in asserting that Mr. Shao's statement never mentioned his mom applying the medicine to him. When in fact it did mention in both of his statements, it did mention it. And the immigration judge erred in saying that it did not mention it. The board noted that error and did not sustain that aspect of the immigration judge's decision. However, the board did affirm the aspect of faulting Mr. Chen, I'm sorry, Mr. Shao, for not mentioning that he went to a clinic to pick up medication. His explanation, which is entirely plausible, not just plausible, but which compels the finding that it was a reasonable explanation, was that that's not an important aspect of his claim. He indicated his mom applied medicine to him. The medicine didn't magically appear. They don't have a medicine manufacturing plant in their home, obviously. It's unreasonable to expect that he would just magically have this medicine. So where he procured this medicine is entirely tangential to his underlying claim, especially where he indicated that his mother at home applied this medicine to him. And so relying on the fact that he didn't mention going to a clinic, seeing a doctor to get a prescription, is unreasonable basis for the immigration judge to reach a negative credibility determination. It wasn't just to get medicine. It was also to a clinic. Is that not an important fact that someone's injuries are serious enough to go somewhere to get attention? Well, he didn't indicate he was actually treated by a doctor. It wasn't that he was saying this is where I received medical treatment. What he indicated was that this is where I got my medicine. He said, I think I went and grabbed and scooped up the medication from the doctor and then came home and my mom applied it to my wounds, which is treatment. He just got the medicine. Correct. And the immigration judge incorrectly referred to this as receiving medical treatment at the clinic, where his testimony is very clear that he only obtained the medication. He did see a doctor who looked at his wounds and then prescribed the medication, but provided no actual treatment. Never in his testimony, never in his statement and in none of the evidence presented. Is there an indication or a claim that he actually received medical treatment? And that is the exact words used by the immigration judge, which further indicates that she misapprehended his testimony and the underlying facts of the claim. Given this glaring error of the agency, this mischaracterization of the record, we would assert that it would be insufficient to reach a negative credibility determination. Now, undoubtedly, the immigration judge and the agency cited other factors for reaching negative credibility determination. We list the five bases that the agency used as a negative credibility determination, one of which is irrelevant to this appeal because that dealt with the issue of whether Mr. Hsiao timely applied for asylum, the date he called his cousin upon arrival in the United States. So that knocks out one of those. So we're down to four. The immigration judge made a demeanor finding with respect to when she asked Mr. Hsiao about how many times he checked in with the police. And undoubtedly, he gives a very confusing one sentence answer where he says two times, five times, then I think 15 times, and he expresses confusion. But given that the other, the main aspect of the negative credibility determination was with respect to this misrepresentation of the treatment received at the clinic, this court cannot be sure that the agency would reach the same negative credibility determination based on that one single sentence. And at the very least, we would ask this court not to guess and to remand to the agency to see whether that single sentence where he expresses confusion about the number of times he checked in with the police would be insufficient to reach negative credibility determination and certainly would be up for the agency to make a determination in the first instance. Unless the court has further questions, I do have a reserve of remaining time for rebuttal. Thank you. Thank you, Your Honor. We'll hear from the government. May it please the court. Good morning. My name is Jesse Buesen. I represent the Attorney General. My apologies. I'm coming down with a cold. So if I'm hard to hear, I apologize. Do the best you can. Thank you, Your Honor. The issue in this case is whether substantial evidence supports the conclusion of the Board of Immigration Appeals that the petitioner did incredibly testify in support of his applications for asylum and withholding of removal, and whether or not he established a well-founded fear of persecution in China based on objective with regard to the doctor. You can look on page 147 of the record where the petitioner testifies regarding seeing the doctor after the immigration judge questioned him about injuries he received. He indicated that, and actually this begins on page 146. He says he was asked, did you require medical attention, and said he didn't go see a doctor at a hospital because he feared going to the hospital, but instead went to a private clinic or a private place, was asked, you mean like a clinic? Is that what you're referring to? Yes, a private small clinic. What did they do to you? He provided me with medical liquid. My mother helped me put it on. Did you go back for follow-up treatment? I went once. Once for follow-up treatment? Yes. He indicates on page 147 that he saw a doctor and names that doctor. Again, this is the first time that this has been brought up in the scope of this case. He did not mention it in his asylum application. How significant an omission is this? He does testify that his mother helped him apply the medication, and as counsel argues, presumably he got the medication from somewhere, and so in the end, is this really a sufficient basis for an adverse credibility finding? I would argue that it is, because first of all, his earlier statements that his mother salved his wound with tears, which doesn't give us much in terms of telling us what kind of treatment this is. They are not necessarily inconsistent. Not inconsistent, but there's a difference between treating wounds at home and having injuries serious enough to warrant seeing a doctor. He even said he feared going to the hospital, indicating that that was something that was a possible course of action, was seeking medical treatment at a hospital. Instead, he did go to see a doctor. He went to see this doctor on two separate occasions, and this does go to the question of whether or not he experienced past because, as this court has held in other cases, receiving medical treatment, going to see a doctor because your wounds are that severe goes to the question of whether this is treatment rising to the level of persecution. And this was not the only matter that the board relied on in finding that he was not statements, his inconsistent statements regarding how many times he was detained, or how many times he had to report to the police after he was released from detention, which is significant because in his statement in support of his asylum application, he indicated that that was such an unendurable event that he had to experience. And when questioned about it, he initially gave a nonresponsive answer. He said, how many times in total did you report before you left China? And he said the last report date was August 15th. That's not what I asked you, sir. I asked how many times in total did you report to the police? Five times. Wait, 15 times. Seven times. All right, sir, you've given me three answers. Is it four to five times, 15, seven times, which is it? And the immigration judge noted that there was a 10 second pause where he did not respond to the question and then asked the question again before petitioner was able to say that it was seven times. And that's given how that he indicated that this was a significant hardship for him in his supporting statement, asylum application. The fact that he didn't know that he gave multiple different answers and took a long amount of time to say how many times he had to report goes to his credibility. And petitioner's counsel also raised the question with respect to... How significant is that? How is he supposed to remember the exact number of times? Well, he did go to... He was the one who reported to the police that number of times. And again, if he needed additional time to think about it, that's not what he did. He started just saying... First, he gave a non-responsive answer. All right, can we stop for 10 seconds? Well, first, he gave a non-responsive answer. Then he gave multiple different answers in quick succession. Then he didn't give an answer at all. And then when asked again, he finally said seven. The immigration judge found that in terms of his demeanor, that seemed to indicate that he was not sure, that he wasn't... That it was indicated that he wasn't being forthright in his claim. What does it mean that he wasn't sure? Clearly, he wasn't sure. Does that mean he was lying? Well, again, the issue here is whether the evidence would compel the conclusion that the IJ could make the inference that where he had indicated how serious an issue this was, and yet when asked about it, couldn't answer a simple question about how many times he'd reported to the police, that it indicated that he wasn't being truthful with respect to his claim. And that is a fair, plausible inference. What about the IJ and the BIA relied on the omission from the pastor's letter, the pastor in China, of the arrest? Well, again... And so the respondent argues that the pastor had simply been asked to provide proof of and in general, how do we evaluate these omissions and how much weight they can and should carry? With respect to the weight of such omissions, the court has held, as was stated in the previous case, that an omission and an inconsistency are functionally equivalent. So in this case, an omission like this would be a significant issue. Always? It would... Always functionally equivalent, omissions and inconsistencies? Or does it depend? I think it would depend both on the particular circumstances of the case, because also inconsistencies don't always carry the same weight. A very minor inconsistency wouldn't carry the same weight as a major inconsistency where, say, the alien failed to mention a huge aspect of a persecution claim or was inconsistent in testifying with respect to that versus, say, getting a date wrong by a day. So it would depend on the nature of the inconsistency or the omission in the individual case, Your Honor. With respect to this one, the IJ found that the petitioner testified that the pastor of of what had happened to him, that he talked to the pastor about his detention and what had happened to him. And under those circumstances where we have a handwritten letter, not just a form letter, but a handwritten letter from the pastor, the immigration judge properly relied on the pastor's failure to mention these incidents entirely in providing this statement. And he states that... Is it unreasonable that it doesn't mention these other things? On that point, I believe the record isn't clear with respect to why, how this letter was solicited. I don't believe there's any testimony where he says, I solicited this letter from the pastor specifically with respect to church attendance. I believe all that petitioner says is... I could probably find it in the record, but I believe all he says is, I think this was only meant to confirm my church attendance. And it looks like that is page 148 of the record. Just says the pastor just provides the proof that relates to whether or not I did go to the church and when did I get baptized. That's the only statement. He didn't provide any other... Supports the argument that it was being provided to attest only to attendance and baptism. I think on that point, it's arguable that whether or not he's stating this was solicited for that specific purpose, or just, I think it was, he doesn't even indicate that he was the one to solicit the letter. And where there's that, it would be unclear. I do not believe it would compel the conclusion that he would be credible on that basis. Thank you. With respect to the pastor's certificate, and I think that's the starting point, is that this has been incorrectly referred to throughout these proceedings as a certificate. A letter, you mean? I'm sorry, as a letter. In the index where it was offered for evidence, it was offered as a certificate. The certificate itself indicates that it is a certificate and is certifying his church membership and baptism. At no point was it claimed to be a personal letter from the pastor. The fact that it's handwritten, I'm not really sure how that's relevant to determining whether or not it's, in fact, just a certification of his membership or supposed to be a personal letter. The fact alone that throughout the proceedings, both the immigration judge and the BIA referred to it as a letter indicates that, at the very least, remand would be required for further clarification why they deem this a personal letter rather than a certificate. With respect to his testimony regarding the so-called treatment received at the clinic, he specifically says that, he's asked on page 146, what did this private small clinic do for you? And he says, he provided me with those medical liquid and my mother helped me to put it on. This is entirely consistent with his written statement on page 428, where he indicates, quote, my mother tearfully salved my wounds for treatment. What about the follow-up visit? There's a follow-up visit to the clinic? Yes. Does he say treatment there? He's asked, did you return for treatment? And he says, yes, but then later clarifies that it wasn't for treatment, but it was for, in fact, to get his medicine. He never used the word treatment. He was asked, the word treatment was used in a question. And I don't think that that granular level of analysis occurred by the immigration judge that they determined that this, in fact, was him saying that it was treatment. What the immigration judge and agency focused on was his failure to mention going to the clinic for, quote, medical treatment in his written statement. And finally, I just would return to the well-founded fear analysis. We have raised this issue from, to the agency at all levels that his proselytizing required a different analysis than that was occurred. So far, the BIA has not responded and I did not see a response indicating in any way by the government that the analysis was sufficient to address his proselytizing here in the United States. Unless the court has further questions, we'll rest on our briefs. Thank you. Thank you, Your Honors.